**In re William George WILLIAMS, Debtor.**

**Justin P. HAVEE, Trustee, Plaintiff,**

**v.**

**BANK OF THE SOUTH, f/k/a Fulton National Bank, Defendant.**

**Bankruptcy No. 81–00349–BKC–SMW. Adv. No. 82–0024–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

April 26, 1982.

Donald A. Lynn, Miami, Fla., for defendant.

Paul G. Hyman, Jr., Miami, Fla., for plaintiff.

Justin P. Havee, trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon an Adversary Complaint for Damages in the amount of Nineteen Thousand Four Hundred Twelve Dollars and Seventeen Cents ($19,412.17) filed herein and the Court having considered the facts as stipulated by the parties, examined the evidence presented, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

That this Court has jurisdiction of the parties hereto and the subject matter hereof.

The facts, as stipulated to by the parties are as follows:

The debtor, William George Williams (debtor) intercepted various checks totalling Thirty Two Thousand Four Hundred and Seventy-Six Dollars and Twenty-Two Cents ($32,476.22) that rightfully belonged to his employer and deposited them under forged endorsements into his personal checking account at the Fulton National Bank, now known as Bank of the South (the Bank), the defendant in this action. Soon after discovering this misconduct, the employer notified the Bank of its claim to the checks and on June 18, 1980, after learning of the employer's claim, the Bank, without the debtor's permission, placed a hold on the debtor's account, debited the account in the amount of Twenty Two Thousand Six Hundred Twenty Dollars and Seventy-Six Cents ($22,620.76) * and placed the funds in escrow pending further investigation. At the time a hold was placed on the debtor's account and it was debited, the employer

had not made formal demand for payment on the Bank although the Bank had knowledge of the employer's claim and the alleged wrongdoing of the debtor. A portion of the debit of June 16, 1980 was applied to offset Three Thousand Two Hundred Eight Dollars and Thirty-Nine Cents ($3,208.39) owed to the Bank by the debtor on account of a MasterCharge debt he had accrued with the Bank. This transaction is not being disputed here. On or about September 11, 1980, the Bank paid the remainder of the debt, Nineteen Thousand Four Hundred Twelve Dollars and Seventeen Cents ($19,412.17) to the employer pursuant to its formal written demand. Subsequent to these transactions the debtor filed for bankruptcy under Chapter 7 of Title 11 of the United States Code. The instant action was commenced by the plaintiff, trustee of the estate of the debtor, to recover the alleged damages resulting from the debit and ultimate disbursement of this amount to the debtor's employer.

The issue presented by these facts is whether the Bank acted within its rights in freezing the funds in the debtor's account, placing these funds in escrow and ultimately disbursing the funds to the original payee of the checks without the consent of the debtor who deposited the checks in his account. The Court finds that the Bank was authorized under the applicable Georgia law to take such action.

The trustee argues that the Bank exercised its right of set-off improperly and that under the facts of this case, the necessary elements triggering a right to set-off are not present. This might be a valid argument if it were not for the fact that any discussion of set-off assumes that the depositor has a right to the funds on deposit which the Bank is usurping. In the case at hand, the debtor had no such right having repeatedly breached the statutory warranty of good title by forging the endorsement on the checks as they were deposited. The

---

* The balance of the debtor's account on June 13, 1980 was Twenty Two Thousand Six Hundred Forty Dollars and Eighty-One Cents ($22,640.81) as evidenced by the debtor's bank statement of that date. The amount debited on June 16, 1980 appears to represent the balance on hand on that date although no evidence was presented to that effect.

Uniform Commercial Code as enacted in Georgia (Georgia Code Annotated Section 109A–3–417) provides in pertinent part as follows:

> (1) A person who obtains payment or acceptance . . . warrants to a person who in good faith pays or accepts that (a) he has good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has good title;

The debtor did not have good title to the checks deposited as he was not the designated payee nor was he authorized by the designated payee to accept payment on its behalf. Thus, the trustee's argument as to set-off is without merit under the facts of this case.

The question presented by the facts of this case is whether the Bank was authorized to debit the debtor's account upon receiving information of possible illegal deposits. The Georgia courts have decided this issue in a case strikingly similar to the case *sui juris*. In *Adams v. Trust Company Bank*, 244 S.E.2d 651, 145 Ga.App. 702 (CA Ga.1978), the defendant Bank, suspecting that a depositor might be converting his employer's checks by depositing them in his own account, seized the balance remaining in the account and began its investigation to determine the true ownership of the funds. The *Adams* court held that "the bank was authorized to remove the funds remaining in Adams' account immediately upon learning that the . . . check had not been properly endorsed. Although this check was apparently paid by the drawee bank through normal checking processes, the proceeds remained the property of [the payee] . . . Since Adams had acquired no apparent title to the checks, the bank acted within its rights in seizing the proceeds from the checks until it could determine whether he had converted the funds."

The instant case is sufficiently similar to the *Adams* case to persuade the Court to find that *Adams* controls the result reached here. In each case, the bank had some knowledge that checks deposited by its customer had been done so under forged endorsements. In both cases, the banks debited the accounts in which the converted checks were deposited and held the funds pending an investigation to determine the true ownership of the proceeds of the checks in question. In the instant case, the funds were turned over to the debtor's employer after an investigation by the Bank and the F.B.I. resulted in a guilty plea by the debtor to the charges against him. The Court finds that, in the instant case, the debtor never acquired title or rights to the checks deposited by him under a forged endorsement. The Court further finds, as enunciated in the *Adams* case, that the Bank was authorized to debit the debtor's account and hold the proceeds of the illegally deposited checks pending an investigation to determine true right and title to such proceeds before turning them over to their rightful owner.

The Court will enter a separate order denying the plaintiff's prayer for damages.